**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CASEY CAPLIN,** | : | |
| **Plaintiff,** | : | |
| **v.** | : | **CIVIL ACTION NO. 3:16-2013** |
| | | **(JUDGE MANNION)** |
| **LACKAWANNA COUNTY,** | : | |
| **BRIAN LOUGHNEY, in his** | | |
| **individual capacity,** | : | |
| **Defendants** | : | |

## MEMORANDUM

Plaintiff Casey Caplin filed this civil rights action alleging violations of her First Amendment rights, pursuant to 42 U.S.C. §1983. Pending before the court is defendants Lackawanna County and Brian Loughney's motion for summary judgment regarding both of plaintiff's claims which was filed under Fed.R.Civ.P. 56. (Doc. 34). Plaintiff contends that she was unconstitutionally terminated as retaliation for testifying truthfully in another court case against the County. Defendants contend that plaintiff was terminated for admitting to wrongdoing in her testimony given in the other case, i.e., for admitting that she failed to report sexual misconduct at the County prison. Based upon the following analysis, the court will **GRANT** the defendants' motion for summary judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

By way of relevant background, on October 3, 2016, the plaintiff

1

commenced the instant action pursuant to [42 U.S.C. §1983](#), claiming that the defendants engaged in retaliation due to her participation in First Amendment protected activities. (Doc. [1](#)). On October 4, 2016, the plaintiff filed an amended complaint. (Doc. [3](#)). The plaintiff, a former correctional officer for Lackawanna County Prison ("LCP") for over 15 years, testified at a deposition in a federal civil rights case, namely, Pleasants v. Lackawanna County, Civil No. 13-1611, M.D.Pa., on March 1, 2016.[1] On June 20, 2016, the plaintiff was interviewed by defendant Loughney, Deputy Director for Human Resources for defendant Lackawanna County, and he possessed the deposition transcript from the plaintiff's deposition in the *Pleasants* case. Loughney asked plaintiff if she testified truthfully in her deposition and she responded that she did. On July 14, 2016, the plaintiff alleges that she was terminated by the defendants "because she provided truthful testimony under oath."

In her amended complaint, the plaintiff asserts two claims relating to her termination. In Count I, the plaintiff claims that defendants, Loughney and Lackawanna County, terminated her in direct retaliation for engaging in a First

---

[1]As the court previously noted, in *Pleasants v. Lackawanna County*, former female inmates sued Lackawanna County and LCP officials under §1983 alleging that they knew male correctional officers at LCP were sexually assaulting female inmates and failed to take any action. *See* Civil No. 13-1611, M.D.Pa. The court also notes that criminal charges have been filed in Lackawanna County Court against seven former male LCP correctional officers, in addition to Black who was previously convicted, alleging that they sexually assaulted female inmates. The charges against six of the former CO's have been bound over to court for trial after preliminary hearings.

Amendment protected activity, i.e., giving sworn deposition testimony in a federal court case. The plaintiff also alleges that the defendants retaliated against her due to her testimony by appealing her award of unemployment compensation and by using her testimony as evidence at the appeal hearing.

In Count II, the plaintiff asserts a municipal liability claim against Lackawanna County under §1983 because it allegedly failed to train and supervise its employees in a way that would ensure they did not harm employees engaging in truthful testimony related to court proceedings.

As relief, the plaintiff requests reinstatement, back pay and front pay as well as compensatory damages against both defendants. She also seeks punitive damages as against Loughney.

On November 9, 2016, the defendants filed an answer to the amended complaint. (Doc. 12). With their answer, the defendants attached eight exhibits to support and supplement their responses and statements made in the answer. The plaintiff then filed a motion to strike the exhibits attached to the defendants' answer,  (Doc. 13).

On November 18, 2016, the defendants filed a motion for judgment on the pleadings. (Doc. 17).

On February 14, 2017, the court denied plaintiff's motion to strike the exhibits attached to defendants' answer to her amended complaint, except with respect to Exhibit C, her deposition transcript. The court also denied the defendants' motion for judgment on the pleadings. (Docs. 24 & 25). *See also*

2017 WL 590277 (M.D.Pa. Feb. 14, 2017).

After discovery was completed, defendants filed a motion for summary judgment, a statement of material facts, and an appendix with exhibits on September 20, 2017. (Docs. 34-36). On October 3, 2017, defendants filed their brief in support of their motion. (Doc. 39).

Plaintiff filed her response to defendants' statement of material facts with exhibits and her brief in opposition to defendants' motion on October 9, 2017. (Docs. 40 & 41).

On October 25, 2017, defendants filed a reply brief in support of their motion for summary judgment. (Doc. 45).

Defendants' motion for summary judgment is now ripe for disposition.

This court has jurisdiction over this action pursuant to 28 U.S.C. §§1331 and 1343.Venue is appropriate in this court since the alleged constitutional violations occurred in this district and all parties are located here. *See* 28 U.S.C. §1391.[2]


## II.   MATERIAL FACTS

Plaintiff is a former correctional officer at the LCP where she worked for

---

[2]Since the parties state the standard for a summary judgment motion in their briefs, the court will not repeat it herein. Also, since the court has stated the standards for a constitutional claim pursuant to §1983 and a claim against the County under Monell v. Dep't. of Soc. Servs., 436 U.S. 658, 694 (1978), in its prior decision, it will not repeat them.

about 15 years. Plaintiff was terminated by the County effective July 14, 2016. The reason given by defendants for terminating plaintiff was for admitting in her March 1, 2016 deposition in the *Pleasants* case that she was not truthful in the LCP investigation regarding correctional officers involved in sexual misconduct with female inmates and failing to follow protocols in the LCP manual, i.e., by not reporting alleged sexual misconduct by prison staff.

In her deposition in the present case, (Doc. 36-1), plaintiff testified that on November 23, 2011, she had specific information about corrections officers involved in sexual harassment or sexual misconduct with female inmates. Plaintiff also stated that sometime on or prior to June 9, 2011, a female inmate at LCP named Jennifer Pasco personally told her that "she blew CO Joe Black for pink sugar packets", i.e., Sweet'n Low. In the deposition, plaintiff also stated that in her March 1, 2016 deposition in the *Pleasants* case she admitted that she did not immediately report Pasco's disclosure about performing oral sex on CO Black to a superior and, that she knew that sexual contact between inmates and correctional officers constituted a crime of institutional sexual assault and a violation of LCP policy. Plaintiff further admitted in her March 1, 2016 deposition that she violated LCP policy by not reporting the alleged sexual assault incident involving CO Black and Pasco. Plaintiff also confirmed that she understood the LCP policy to require a staff member to report a sexual assault incident to a higher-up upon learning of the incident.

In this case, plaintiff claims that she was terminated by defendants due to her stated testimony in the *Pleasants* case at her March 1, 2016 deposition about what Pasco had told her regarding CO Black. She claims that she did not report Pasco's allegations since they were "rumor" and, since she did not personally witness Black assaulting Pasco. There is no dispute that plaintiff did not ever witness Black sexually assaulting any inmate at LCP. Plaintiff also claims that management at LCP was already aware about sexual misconduct by CO Black before she gave her testimony in the *Pleasants* case and about the specifics of the incidents with Pasco. Plaintiff testified that LCP management, including Robert McGuire, a captain at LCP and Vincent Mooney, former LCP Warden, was previously made aware of CO Black's sexual misconduct by a Scranton Police Officer and that management did not take any action regarding the misconduct. Plaintiff also states that defendants were aware of Pasco's allegations about Black in January 2011 and that they did nothing about them.

Specifically, the evidence shows that on January 4, 2011, Scranton Police Officer Lawrence Spathelf had a discussion with Pasco and she told him that she had performed oral sex on a guard at LCP named Black during her incarceration. On February 2, 2011, Scranton Sergeant David Mitchell then informed County Detective Chris Kolcharno in person of Pasco's allegations and gave Kolcharno a letter from Spathelf regarding his discussion with Pasco. Kolcharno advised Mitchell that there was an ongoing

investigation at LCP and that he had been in contact with LCP Captain Robert McGuire about sexual misconduct by CO's regarding female inmates at the prison.

Plaintiff testified in the present case that the only reason for her termination was her alleged protected speech contained in her March 1, 2016 deposition transcript regarding Pasco in which she admitted to not reporting an alleged sexual assault by CO Black. Loughney also testified that plaintiff was terminated for failing to report Pasco's allegation to her about CO Black.

Eventually, Black was criminally charged in Lackawanna County and he pled guilty to charges related to sexual assault of female inmates at LCP, including sexually assaulting inmate April Pleasants between June 9, 2011 and November 23, 2011.

On November 23, 2011, plaintiff was interview by LCP Lieutenant Richard Grenfell as part of an internal investigation targeting former CO Black regarding allegations of sexual misconduct. Grenfell approached plaintiff seeking to obtain information about sexual misconduct committed by Black at LCP. Plaintiff did not know that Black was under investigation until she was interviewed. Other CO's at LCP were also interviewed by Grenfell. Plaintiff was not the target of Grenfell's investigation.

Plaintiff did not reach out to Grenfell prior to November 23, 2011 to report that Pasco revealed she had oral sex with Black despite the fact that plaintiff testified Pasco told her of the allegations about Black sometime on or

prior to June 9, 2011, the date Pasco was released from LCP.

Plaintiff did not report up the chain-of-command what Pasco told her about Black "until [she] was asked about it" by Grenfell during his investigation on November 23, 2011. As such, plaintiff admitted to a delay of approximately five months between the time Pasco told her about the allegations regarding Black and the time that Grenfell asked her about it. Plaintiff also did not tell Grenfell the date on which Pasco reported to her the incident with Black. Specifically, according to Grenfell's Investigation Report, plaintiff told Grenfell that "several [female] inmates had come to her and told her about sexual misconduct [at LCP]", namely, "Pasco, Sartin, and Pleasants." Grenfell also reported that plaintiff was told by Pasco that "she blew CO Black for pink sugar packets", and that plaintiff was told by Sartin that "she saw inmate Amanda Smith give CO Black a 'blow job.'" Further, Grenfell reported plaintiff told him that she "heard that CO Black had sex on the floor in cell M-14 with inmate Pleasants." Finally, Grenfell reported that "plaintiff advised that she had spoken about the allegations to some of her workmates, i.e., CO's Paula Bondy and Mary Beth Coar", and that "she thought it unusual that CO Black spent so much time on the blocks."

Plaintiff however points out that other CO's at LCP, including Heather Wolff, Amanda Smith, Mary Beth Coar, and Tara Sacchetti, also disclosed information about Black's alleged sexual misconduct to Grenfell as part of his investigation and admitted that they did not report it up the chain-of-command,

but they were not disciplined or terminated for their failure to report it.

As part of his investigation into alleged sexual misconduct by Black, Grenfell then asked plaintiff ten questions from a questionnaire during her interview.

On March 1, 2016, plaintiff was deposed under oath in the case of *Pleasants v. Lackawanna County* and *Mecca v. Lackawanna County*, and plaintiff stated that her testimony during her deposition was truthful and accurate. Plaintiff testified that at the time Pasco told her about the incident with Black, which was on or before June 9, 2011, other people at LCP knew that "Pasco was blowing Joe Black" and, that this was common chatter at the prison. Plaintiff also stated that she was aware inmate Pleasants was sexually assaulted by Black but she did not report it because everybody knew. Plaintiff also knew at the time she was aware of the Pasco's and Pleasants' incidents, that it was a crime for a CO to have sex with an inmate, yet she did not report either incident. Further, plaintiff admitted that she knew about the Pasco incident before Pleasants was sexually assaulted by Black.

Plaintiff also indicated that she was aware, from working at LCP, of an understanding at the prison that CO's would not tell on each other or report misconduct by another CO. Moreover, after Pasco reported the incident she had with Black to plaintiff, plaintiff spoke to Black and told him "something along the lines that there's a ton of rumors going around, as a friend, like, just in passing." Plaintiff admitted that even though she did not witness the Pasco

incident with Black and even though she did not believe it since there are a lot of rumors at the prison, she thought it would have been appropriate for her to report the incident and let them do an investigation. Notably, plaintiff acknowledged that if she had reported the Pasco incident when Pasco spoke to her, possibly Pleasants would not have been sexually assaulted by Black.

In her March 1, 2016 deposition, plaintiff admitted that her negative response to the second question contained in Grenfell's November 23, 2011 investigative questionnaire, namely, "[h]ave you heard of any Corrections Officers involved in sexual harassment or sexual misconduct in the Lacka[wanna] Co[unty] Prison," was not truthful.

Also, during her March 1, 2016 deposition, plaintiff acknowledged that she answered in the negative to the fourth question in Grenfell's investigative questionnaire, i.e., "[d]o you have any specific information about Corrections Officers involved in sexual harassment or sexual misconduct with inmates," even though she was told by Pasco about the incident with Black on or before June 9, 2011. Further, plaintiff admitted that she did not report the allegations Pasco told her about Black, and that the first time she mentioned the incident was on November 23, 2011 during Grenfell's investigation.

Plaintiff however clarified in her March 1, 2016 testimony that only Pasco had actually reported to her about the incident with Black and that Sartin's report to her about the Black's sexual encounter with Smith was after Black was already "technically in trouble" and either removed from the prison

or taken off the Unit where female inmates were housed. Plaintiff also stated that Pleasants never came to her and reported any misconduct.

Additionally, plaintiff admitted during her March 1, 2016 deposition that sexual contact between inmates and correctional officers constitutes the crime of institutional sexual assault and a violation of LCP policy. LCP Policy & Procedure book, which included a sexual misconduct section, was posted in every Unit in the prison. Plaintiff understood LCP's sexual misconduct policy to require a staff member to report any information of an inmate having sexual relations with a correctional officer to a superior upon learning such information. Specifically, reports of sexual misconduct or rumors of such misconduct between a staff member and an inmate were to be reported by the CO to his/her "first line supervisor and then it goes up the chain from there." Further, plaintiff could not say for sure whether there were any circumstances in which a CO would not report an instance of sexual misconduct that was bought to his/her attention.

Plaintiff also admitted in her stated deposition that she violated LCP policy by not reporting to a superior officer Pasco's allegation to her about Black's sexual misconduct at the time Pasco told her. Plaintiff did not report what Pasco told her about Black because she did not observe the incident and, because she did not believe Pasco and considered the allegation to be a rumor.

Specifically, LCP's sexual misconduct policy required a CO to report any

information of an inmate having sexual relations with a CO to a higher-up. Reports of sexual misconduct or rumors of sexual misconduct between staff members and inmates were to be reported by CO's to their "first line supervisor and then it goes up the chain from there." The policy defined a sexual misconduct allegation as "[a]n event that is said to have happened, but that has not yet been verified" and, it provided that "[t]hese events include rumor, inmate talk and staff talk."

Additionally, plaintiff admits that sexual assault of inmates cannot be tolerated at LCP and, that sexual contact between CO's and inmates is not permitted and is a criminal violation.

While plaintiff was not aware of the dates that Pleasants was sexually assaulted by Black, the assaults were after Pasco's report to plaintiff about her sexual encounter with Black, i.e., in July 2011 and September 2011.

Although plaintiff admitted that LCP Administration's knowledge about the sexual misconduct committed by Black did not absolve her of the obligation to report what Pasco told her, she stated that if the Administration "don't believe it or take what a Scranton Police Officer is saying and/or do something about it, what is my word going to change anything?"

Following her testimony in the *Pleasants* case, plaintiff was interviewed by Loughney and he had the deposition transcript with him. Loughney asked plaintiff if she testified truthfully in the *Pleasants* case and she responded that she did. Defendants claim that they were not aware of plaintiff's

inconsistencies between her admissions in her deposition testimony and her responses to Grenfell's questions until after her testimony.

Plaintiff contends that she was unlawfully terminated by defendants due to her March 1, 2016 truthful deposition testimony in the *Pleasants* case. Plaintiff's testimony seemingly favored plaintiff Pleasants' civil rights case and not the defendant County's case. It is undisputed that after plaintiff disclosed Pasco's allegation about CO Black on November 23, 2011 to Grenfell, for almost five years, until the time plaintiff was terminated on July 14, 2016 for not timely reporting the Pasco incident, there were no investigations into plaintiff and plaintiff was not disciplined for failing to report the incident.

There is no dispute that after plaintiff was terminated by defendants on July 14, 2016, the reasons given were that she provided false statements during an internal investigation and that she failed to transmit reports of sexual abuse to the appropriate prison officials. After her termination, plaintiff had a grievance arbitration hearing on June 1, 2017 challenging her termination, and she testified at the hearing truthfully and accurately. On September 5, 2017, the arbitrator found that "the County had just cause to discharge [plaintiff] for providing false or misleading information during the November 23, 2011 investigatory interview."

There is no dispute that after plaintiff was terminated she applied for unemployment compensation and the arbitrator granted plaintiff's application, which defendants opposed. The arbitrator found that since LCP management knew of plaintiff's disclosure about sexual misconduct by Black on November

23, 2011, and since management did not act on the information at that time and did not discipline plaintiff, management could not use plaintiff's failure to timely report the information about Black as the basis to discipline her especially since it was too remote from the time she was terminated in July 2016. It was also noted that plaintiff was terminated shortly after she gave her March 1, 2016 deposition testimony in the *Pleasants* case.

## III.  DISCUSSION

In their brief in support of their motion for summary judgment, defendants make the following arguments: 1) the plaintiff's First Amendment retaliation claim fails as a matter of law against both defendants since the wrongdoing she admitted to while testifying in her March 1, 2016 deposition, including her failure to respond accurately and truthfully to some of Grenfell's questions and her failure to timely report the Pasco incident with Black, was not protected speech; 2) the municipal liability claim against the County fails since speech that should have been reported up the chain of command but was not does not constitute protected speech; 3) even if plaintiff's testimony in the *Pleasants* case warrants the *Pickering* balance test, the test tips in favor of defendants; 4) defendant Loughney is entitled to qualified immunity from suit since the First Amendment does not protect testimonial admissions of workplace misconduct or speech that should have been reported to superiors; and 5) the plaintiff failed to prove that Loughney was motivated by evil intent or that his conduct involved reckless or callous indifference to her

First Amendment rights precluding her claim for punitive damages.

Defendants state that in her March 1, 2016 deposition, "Plaintiff admitted to providing false statements during an internal investigation, violating prison policy by failing to report first-hand allegations of sexual abuse and to turning her back on the female inmates she was charged with protecting." Defendants argue that the plaintiff fails to state a retaliation claim because she admitted to wrongdoing in her deposition testimony and thus, did not engage in protected speech under the First Amendment. Defendants cite to Lane v. Franks, — U.S. —, 134 S. Ct. 2369, 2381 n. 5 (2014), and rely on the quote that "[o]f course, quite apart from *Pickering* balancing, wrongdoing that an employee admits to while testifying may be a valid basis for termination or other discipline."

"To establish a First Amendment retaliation claim, a public employee must show that (1) his speech is protected by the First Amendment and (2) the speech was a substantial or motivating factor in the alleged retaliatory action, which, if both are proved, shifts the burden to the employer to prove that (3) the same action would have been taken even if the speech had not occurred." Dougherty v. School Dist. of Phila., 772 F.3d 979, 986 (3d Cir. 2014) (citing Gorum v. Sessoms, 561 F.3d 179, 184 (3d Cir. 2009)).

Plaintiff argues that her speech was protected under the First Amendment. She contends that she has established the three above elements regarding her First Amendment retaliation claim. Specifically, regarding the first element, plaintiff states that the evidence shows she

engaged in constitutionally protected activity by testifying truthfully in a deposition in a court case, i.e., the *Pleasants* case. Plaintiff cites to Lane,134 S.Ct. at 2373, and its holding that "Lane's sworn testimony outside the scope of his ordinary job duties is entitled to First Amendment protection." Plaintiff states the evidence shows that she was terminated by defendants from her job for 15 years as a CO at LCP due to her truthful testimony. She also states that in retaliation for her testimony, defendants "appealed her [award of] unemployment compensation based solely on the testimony she provided under oath at a deposition." She further contends that the evidence shows her truthful testimony was the sole reason why defendants terminated her and why defendants appealed her unemployment compensation award. Plaintiff focuses on the fact that she gave truthful testimony in a court case as she was obligated to do as a citizen to ensure the integrity of the judicial process and the fact that courts have prohibited retaliation against all citizens, including public employees, for giving such testimony. If these were the only facts in this case, then there is no question that plaintiff's speech was protected under the First Amendment. *See* Reilly v. City of Atl. City, 532 F.3d 216, 231-32 (3d Cir. 2008). However, these are not the only facts herein. Rather, the facts include plaintiff's own admitted and undisputed wrongdoing in her testimony which defendants contend takes her out of the protection afforded by the First Amendment.

In particular, defendants argue that plaintiff was not terminated for testifying in her deposition in the *Pleasants* case but, rather she was

terminated for the wrongdoing to which she admitted in her deposition, namely, not being truthful in the LCP investigation and failing to follow protocols in the LCP manual, i.e., by timely reporting what Pasco told her about Black. Thus, defendants assert that plaintiff has failed to establish she was retaliated against due to protected speech under the First Amendment and her retaliation claim fails as a matter of law under *Lane*. Defendants cite to plaintiff's own deposition testimony in the *Pleasants* case to largely support their contention that plaintiff cannot establish a retaliation claim since her speech was not protected speech due to her admissions of wrongdoing.

In Lane v. Franks, ––– U.S. –––, 134 S.Ct. 2369 (2014), the Supreme Court found that a public employee's testimony which was compelled by a subpoena was speech in the employee's capacity as a citizen that qualified for First Amendment protection, and not speech as a government employee which was not protected. *See* Dougherty, 772 F.3d at 990 ("In *Lane*, the Supreme Court held that truthful sworn testimony, compelled by subpoena and made outside the scope of the employee's 'ordinary job responsibilities,' is protected under the First Amendment.") (citing Lane, 134 S.Ct. at 2378). However, in the present case, even if plaintiff's speech in her deposition testimony is citizen speech, it is not protected under the First Amendment based on the facts of this case. In Dougherty, 772 F.3d at 988, the Third Circuit also stated that it has "declined to extend First Amendment protection to speech where public employees were required to take the speech 'up the chain of command.'" (citing Foraker v. Chaffinch, 501 F.3d 231, 241-43 (3d

Cir. 2007) ("holding that police officers' statements concerning hazardous conditions at a firing range were made within their official duties since they were obligated to report that type of information up the chain of command), *abrogated on other grounds by* Borough of Duryea v. Guarnieri, 564 U.S. 379, 131 S.Ct. 2488 (2011)).

Despite plaintiff's assertion that Pasco's allegation about the Black incident was only a "rumor", that it was "non-confirmed", that she did not witness the incident and that she did not believe Pasco, the simple fact remains that plaintiff was undisputedly required to report such an allegation to her superior officer in the chain of command at the prison when Pasco told her. Neither LCP policy nor common sense required only the reporting of sexual misconduct by a staff member alleged by the actual victim if the other staff member witnessed the incident or believed the victim. It was clearly not for plaintiff to decide which allegations of sexually misconduct by a staff member should be reported and which ones should not. What is even more troubling is the fact that plaintiff did not report the Pasco allegation on her own at any time but waited until Grenfell's investigation which was at least five months later. Further, plaintiff admitted that she was not truthful in her answers to all of Grenfell's questions on his questionnaire, specifically questions numbers 2 and 4.

Moreover, plaintiff argues that since defendants were aware of the alleged sexual misconduct by Black back in January-February of 2011 when Mitchell told Kolcharno and the County did nothing about it, this somehow

relieved her of her duty to report the Pasco allegation. This fact did not relieve plaintiff of her obligation to immediately report the incident of which she was directly told by the female inmate who personally alleged she was sexually abused by a CO. Pasco's report of the incident was not hearsay as plaintiff remarkably suggests, nor was it rumor or innuendo. It was a specific allegation given directly to plaintiff from the victim of the sexual abuse. Further, even if LCP officials did not take any action after Mitchell's disclosure, plaintiff's timely reporting of the Pasco incident would have substantiated Mitchell's report and may have resulted in quicker disciplinary action and criminal charges against Black before he sexually assaulted inmate Pleasants. Nor can it be ignored that plaintiff admitted to essentially a code of silence among the CO's regarding any allegations of misconduct by one of their own, and that plaintiff actually warned Black about the rumors circulating in the prison about his conduct.

Additionally, plaintiff argues that since defendants took no disciplinary action against her for five years after Grenfell's investigation, "her repeating what was already known to her employer [in her deposition testimony] was not engaging in any misconduct." The fact that defendants failed to timely discipline plaintiff and may have failed to timely act upon Mitchell's disclosure does not effect the court's analysis of her First Amendment claim as to whether her speech was protected, regardless of the fact that the unemployment compensation arbitrator found that the 5-year delay to act by defendants could not be used as a basis to discipline plaintiff and that

plaintiff's failure to timely report the Black incident with Pasco was too remote to be used as a reason to terminate her. The arbitrator was not considering a constitutional First Amendment speech claim by plaintiff as the court is in this case. Nor did the arbitrator have the authority to consider such a claim. Indeed, the district court's determination of whether the facts show that plaintiff's speech is entitled to protection by the First Amendment is a question of law. Dougherty, 772 F.3d at 987 (citation omitted).

Thus, the disturbing failure of the County to act promptly on Mitchell's report about Black does not change the fact that plaintiff admitted to her own wrongdoing in her deposition in the *Pleasants* case. As stated, in Dougherty, id. at 988, the Third Circuit has not given "First Amendment protection to speech where public employees were required to take the speech 'up the chain of command.'" As such, plaintiff's testimony in *Pleasants* regarding sexual abuse by CO's in the prison were made within her official duties because she was undisputedly required to report this type of misconduct up the chain of command at LCP. Moreover, the Third Circuit has also declined to extend First Amendment protection to speech "where an employee's technically-off-duty speech related to 'special knowledge' or 'experience' acquired through [her] de facto job duties." Id. (citation omitted). Here, plaintiff's "technically-off-duty speech" during her deposition clearly related to "special knowledge" and "experience" she acquired through her job duties as a CO at LCP. Indeed, Pasco approached plaintiff and disclosed the sexual abuse she personally experienced by Black because plaintiff was a CO who

worked on the Unit where female inmates were housed, i.e., plaintiff's special knowledge", and since plaintiff had experience with LCP's policy and its mandatory reporting misconduct by a staff member based on her 15 years of employment with LCP.

It is also of no moment with respect to the First Amendment analysis at issue in this case whether other CO's, including Wolff, Smith, Coar, Sacchetti, who were interviewed in November 2011, knew of allegations of sexual misconduct made by inmates and were not terminated. At issue here is whether plaintiff's sworn deposition testimony she gave in the *Pleasants* case was protected speech under the First Amendment. This court has found that plaintiff's speech was not protected by the First Amendment since, as a public employee who worked for LCP, she was undeniably required to have taken the speech "up the chain of command" by timely reporting it to her superior notwithstanding her disbelief of inmate Pasco's allegations. Additionally, the court finds that it is not necessary to discuss the three-step inquiry and balancing test established in Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731 (1968), since plaintiff's admissions of wrongdoing in her testimony in the *Pleasants* case was not protected speech under the First Amendment. *See* Lane, 134 S. Ct. at 2381 n. 5.

The court also finds that since it will grant summary judgment in Loughney's favor regarding the plaintiff's First Amendment retaliation claim in Count I of her amended complaint, summary judgment will also be granted to the defendant County with respect to the plaintiff's claim for municipal

liability under *Monell* against the County in Count II. With respect to defendant County, the "first inquiry in any case alleging municipal liability under §1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." City of Canton v. Harris, 489 U.S. 378, 385, 109 S.Ct. 1197 (1989). Since the plaintiff has failed to establish a constitutional claim under the First Amendment against defendant Loughney, her first Amendment claim against defendant County based on *Monell* also fails. See Bergdoll v. City of York, 515 Fed.Appx. 165, 171 (3d Cir. 2013) (citing City of Los Angeles v. Heller, 475 U.S. 796, 799, 106 S.Ct. 1571 (1986) ("[N]either *Monell* ... nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when ... the officer inflicted no constitutional harm.")).

## IV.    CONCLUSION

For the foregoing reasons, the court will **GRANT** the defendants' motion for summary judgment, (Doc. 34), with respect to both counts of the plaintiff's amended complaint, (Doc. 13). An appropriate order shall follow.


s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: May 15, 2018**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2016 MEMORANDA\16-2013-05.wpd